James SCOTT, John R. Kuhlmann, Jr. and Golden Eagle Reserve Association, Plaintiffs/Appellants,

v.

RANCH ROY–L, INC., Gary Schaeffer and Jill M. Schaeffer, Defendants/Respondents.

No. ED 88991.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 16, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 27, 2007.

Application for Transfer Denied
Jan. 22, 2008.

Donald U. Beimdiek, Jay A. Summerville, Jeffery T. McPherson, Saint Louis, MO, for plaintiff/appellants.

Vincent L. Johnson, Saint Peters, MO, for respondent Ranch Roy–L, Inc.

JoAnn T. Sandifer, Clayton, MO, for respondent Gary and Jill Schaeffer.

SHERRI B. SULLIVAN, J.

*Introduction*

James Scott and John Kuhlmann[1] (Appellants) appeal from the trial court's judgment in favor of Ranch Roy–L, Inc. (Ranch Roy–L), Gary Schaeffer and Jill M. Schaeffer (the Schaeffers) (Ranch Roy–L and the Schaeffers collectively referred to as Respondents) on Appellants' First Amended Complaint and on Respondents' Counterclaim, both of which sought declaratory and injunctive relief on the issues in question, to-wit, whether Ranch Roy–L is the successor Developer to one Roy Longstreet and whether as such Ranch Roy–L had the right to add and subdivide certain property to a subdivision created by Roy Longstreet and transferred to Ranch Roy–L. We affirm.

*Factual and Procedural Background*

In 1966, Roy Longstreet and his sons William and James created a planned residential community, or subdivision, called "Golden Eagle Reserve" (sometimes referred to as the Subdivision), out of 300 acres of land in Montgomery County by recording with the Montgomery County Recorder of Deeds a plat of the subdivision and a document entitled Declaration of Covenants and Restrictions of Golden Eagle Reserve (the Declaration). The Declaration grants certain powers to the "Developer," which it defines as Roy Longstreet.

In that same year, Roy and his sons, James and William, also incorporated the "Golden Eagle Reserve Association" (the Association). Every lot owner in the Subdivision is a member of the Association. At the first meeting of the Board of Directors of the Association in 1966, By–Laws were adopted. The By–Laws define "Developer" as "Roy W. Longstreet and his heirs, representative or assigns, including any corporation to which he may sell or assign the land which is being developed as Golden Eagle Reserve." Article II, section 2 of the Declaration states as follows:

> The Developer, its heir and assigns, shall in the future have the right to bring within the scheme of this declaration additional property, or properties, provided that such additions are in accord with a general plan of development prepared prior to the sale of any lot in any such new development and made known to every purchaser prior to the sale.

Article VIII, Section 1 is a restriction on all lots on the property described in Article II, which states, among other things, that

---

1. Golden Eagle Reserve Association, although a party to the proceedings below, does not join in this appeal.

"[n]o lot may be subdivided, but more than one lot may be purchased and combined to make one lot."

Article VII addresses out-lots. Section 3 of Article VII states that, notwithstanding any other restrictions in the Declaration, "Developer, for himself and his heirs and assigns, reserves the right to resubdivide out-lots G and H[.]" No mention is made about subdividing Out–Lot F, which is at issue in this case.

In 1972, Roy, James and William, all of whom had been among the incorporators of the Association, incorporated "Ranch Roy–L." On November 16, 1972, Roy and his wife conveyed real property, by warranty deed, to Ranch Roy–L, which included all property in the Subdivision with the noted exceptions of a number of individual lots, and some adjacent property that was not originally a part of the Subdivision. This warranty deed included a clause stating that Roy and his wife were conveying the real property to Ranch Roy–L to have and to hold "with all and singular the rights, privileges appurtenances and immunities thereto or in anywise appertaining unto the said party of the second part [Ranch Roy–L], and unto its heirs and assigns forever[.]" James and William also deeded real property to Ranch Roy–L, totaling 200 and 517 acres respectively that adjoined the real property that was originally part of the Subdivision.

In 1987 and 1988, Ranch Roy–L conveyed real property by quit-claim deeds to the Association, which the latter accepted.

On May 3, 1988, Ranch Roy–L subdivided Out–Lot F, which was not common property of the Subdivision, into ten lots, numbered 113 through 122, by recording a plat of this re-subdivided property with the Recorder of Deeds. On December 31, 2001, Ranch Roy–L purported to add a

section of real property to the Subdivision, which it designated as "Golden Eagle Reserve, Section Three," recording a plat thereof with the Recorder of Deeds. That same day, Ranch Roy–L conveyed this real property to the Schaeffers, and attempted to convey additional property and an easement within the original boundaries of Golden Eagle Reserve, Section One. These areas had been designated as common ground of Section One in the original plat.

In the fall of 2002, Appellants, who are Subdivision lot owners, filed a petition[2] against Ranch Roy–L and the Schaeffers, seeking a declaratory judgment that Ranch Roy–L's 1988 subdivision of Out–Lot F into lots 113 through 122 and Ranch Roy–L's 2001 addition of Golden Eagle Reserve, Section Three to the Subdivision were unlawful. Appellants maintained that subdivision of Out–Lot F was prohibited by the Declaration, and that Roy Longstreet, the Developer, never conveyed or assigned to Ranch Roy–L the right to add real property to the Subdivision.

Respondents filed answers raising a variety of affirmative defenses. Ranch Roy–L also filed a four-count counterclaim seeking declaratory relief. Relevant to our discussion is Count I of the counterclaim, which sought a declaration that Ranch Roy–L is the successor Developer to Roy Longstreet with all rights thereto, and that Ranch Roy–L is not prohibited from dividing property that it owns within the Subdivision, and that its subdivision of Out–Lot F is lawful.

Appellants filed a motion for summary judgment on the counts in their amended petition and on Count I of Respondents' counterclaim. Respondents filed amended responses to this motion. Ranch Roy–L filed a separate motion for summary judgment on Count I of its counterclaim.

2. Appellants later filed an amended petition.

The trial court granted summary judgment to Ranch Roy–L on Count I of its counterclaim, finding that the undisputed facts showed "that Ranch Roy–L is the successor Developer of Golden Eagle Reserve Association as defined in the By-Laws of Golden Eagle Reserve Association" and that Ranch Roy–L lawfully subdivided Out–Lot F "in accordance with the authority vested in Ranch Roy–L, Inc. by the Declarations and according to the specifications within the Declarations." Appellants appealed, and this Court found that summary judgment was not proper because "the undisputed facts did *not* establish that Ranch Roy–L is the successor developer to Roy Longstreet with those developer's rights that Roy Longstreet possessed." *Scott v. Ranch Roy–L, Inc.,* 182 S.W.3d 627, 636 (Mo.App. E.D.2005) (emphasis added). We remanded the case without reaching the issue of whether the Declaration permitted the subdivision of Out–Lot F, or whether Appellants' suit was barred by certain affirmative defenses raised by Respondents.

On remand, after a bench trial, the trial court again entered judgment in favor of Ranch Roy–L on the issue of Ranch Roy–L's status as successor Developer to Roy Longstreet that properly added ground to Golden Eagle Reserve, and entered judgment in favor of Ranch Roy–L on the issue of Ranch Roy–L's right to subdivide Out–Lot F of Golden Eagle Reserve. Appellants again appeal.

### Points on Appeal

In their first point, Appellants assert that the trial court erred in entering judgment in favor of Ranch Roy–L on the issue of Ranch Roy–L's status as successor Developer to Roy Longstreet that properly added ground to Golden Eagle Reserve; because there is no evidence that Roy Longstreet assigned his retained right under the Declaration to add new ground to the subdivision and no evidence showing that Appellants' suit was barred by estoppel or waiver.

In their second point, Appellants maintain that the trial court erred in entering judgment in favor of Ranch Roy–L on the issue of Ranch Roy–L's right to subdivide Out–Lot F of Golden Eagle Reserve, and finding that Ranch Roy–L lawfully subdivided Out–Lot F in accordance with the authority vested in it by the Declaration, as Ranch Roy–L did not have the right to subdivide Out–Lot F because: (1) Ranch Roy–L did not exist when the Declaration was created and recorded, and did not later acquire the property rights that the Declaration vested in Roy Longstreet; (2) the Declaration's plain language prohibits the subdivision of Out–Lot F, and (3) Appellants' claims are not barred by laches, waiver, abandonment or the statute of limitations.

### Standard of Review

■ The standard by which this Court reviews a declaratory judgment action is the same as in any other court-tried case. *Dodson v. City Of Wentzville,* 216 S.W.3d 173, 176 (Mo.App. E.D.2007). This Court will affirm the judgment of the trial court unless there is no substantial evidence to support the judgment, unless the judgment is against the weight of the evidence, unless the judgment erroneously declares the law or unless the judgment erroneously applies the law. *Id.; Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976).

■ Our present standard of review differs than the one we applied when the trial court's grant of summary judgment in favor of Ranch Roy–L came to us on the previous appeal in *Scott v. Ranch Roy–L, Inc.,* 182 S.W.3d 627 (Mo.App. E.D.2005). The standard of review for summary judgment is *de novo* and the propriety of it is

purely an issue of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). What we found to be genuine issues of fact in Ranch Roy–L precluding *summary* judgment have now been resolved by the trier of fact in this case, the trial court. Accordingly, we now review to determine whether the trial court's judgment is supported by substantial evidence. *Dodson*, 216 S.W.3d at 176.

### Discussion

Contrary to Appellants' assertion in their first point, we find evidence in the record showing that Roy Longstreet assigned his retained right under the Declaration to add new ground to the Subdivision, to-wit: Roy Longstreet and his wife, by general warranty deed, conveyed the Subdivision property to Ranch Roy–L on November 16, 1972. "The language of the *habendum* clause in that deed, as in all general warranty deeds, is broad, conveying to the grantee, Ranch Roy–L, 'TO HAVE AND TO HOLD, The premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining.....'" *Ranch Roy–L, Inc.*, 182 S.W.3d at 633. Although we found that such a conveyance would seem to convey only superficially Roy Longstreet's rights as the developer of the Subdivision, because such rights are personal and do not run with the land, the conveyance does serve as evidence of Roy Longstreet's intent to convey his rights as Developer to Ranch Roy–L. "The intent to assign an interest is key" and an assignment is accomplished where "the circumstances show an intention on one side to assign and on the other side to receive." *Id.*, citing *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo.banc 2002).

Ranch Roy–L accepted the conveyance and proceeded to exercise rights of the Developer, such as conveying common property to the Association; maintaining common properties; sending its representatives to act and vote on its behalf as the Developer at Association meetings; subdividing Out–Lot F; and incurring the expenses in carrying out the obligations of the Developer under the Declaration. Since the Declaration reserved these rights to the Developer, originally Roy Longstreet; and then Ranch Roy–L, after its incorporation and receipt of the warranty deed, began to exercise those same rights, it can be inferred that Roy Longstreet intended to convey Developer rights to Ranch Roy–L.

Ranch Roy–L also was treated by the Association as the Developer. Ranch Roy–L's lots were not assessed fees by the Association. Furthermore, lot owners, who were Association members, submitted notices of sale to Ranch Roy–L so that it could exercise its right of first refusal. These rights and privileges were reserved to the Developer. The Association directed Ranch Roy–L to maintain common properties in its capacity as the Developer. Ranch Roy–L's president, James Longstreet, was referred to in the Association's Board's minutes as the Developer, and he voted in the capacity of the Developer. The Association accepted deeds of common property from Ranch Roy–L. Under the Declaration, only the Developer could own and convey the common property. In 1992, the Association accepted Ranch Roy–L's addition of *new property* into the Subdivision. Again, such right was reserved to the Developer. The Association, including Appellants, never objected to the exercise by Ranch Roy–L of any of these rights that the Declaration reserved to the Developer.

There is also evidence in the record that Roy Longstreet had contemplated that once he established the Subdivision, he would transfer the Developer rights to a corporate entity. The Subdivision By-Laws state that the Developer includes

Roy Longstreet's assigns, "including any corporation to which he may sell or assign the land which is being developed as Golden Eagle Reserve." Six years after he created the Subdivision, Roy Longstreet incorporated Ranch Roy–L, and one month later, transferred the Subdivision to it by general warranty deed. The very language of the By–Laws makes Roy Longstreet's intent to convey the Developer's rights to Ranch Roy–L apparent. Furthermore, part of the conveyance included the Subdivision common property, which, under the Declaration, can only be owned by the Developer or transferred to the Association.

 To support their position that the trial court's judgment should be affirmed, Respondents submit the testimony of William Longstreet, who stated that Roy Longstreet told him that he intended to transfer his rights as Developer to Ranch Roy–L. This testimony is hearsay in that it is an out-of-court statement used to prove the truth of the matter asserted and it depends upon the veracity of the statement for its value. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 59 (Mo.banc 1999). As such, it is not properly relied on in establishing Roy Longstreet's intent. The trial court's judgment does not indicate that it relied on this evidence in determining Roy Longstreet's intent. As such, we disregard this testimony in reviewing the trial court's judgment. However, William Longstreet's testimony that, as an officer of Ranch Roy–L, he understood that Ranch Roy–L became the Developer under the Declaration is admissible and serves as evidence of Roy Longstreet's intent to transfer the Developer's rights to Ranch Roy–L in 1972. This testimony was uncontroverted.

Appellants' position, taken to its logical conclusion, is also unworkable. Appellants have no compunction about allowing Ranch Roy–L to assume and exercise *some* of the Developer's rights, such as maintaining the common areas, while objecting to Ranch Roy–L's exercise of other Developer rights, such as subdividing Out–Lot F. Unfortunately for Appellants, there are no distinctions between the various rights reserved to the Developer in the Declaration. Further, Appellants' assertion that it was their understanding that there would be no more expansion of the Subdivision because the only one who ever had Developer rights, Roy Longstreet, is dead, is inconsistent with the current exercise of other rights reserved to the Developer by Ranch Roy–L. If Appellants' notion that the rights of the Developer died with Roy Longstreet, then *none* of the Developer's rights and functions, even the ones that benefit Appellants and allow the Subdivision to be maintained, could be legally exercised by anyone. Clearly, this scenario would not be acceptable to Appellants, and the consequences of such a conclusion would not be beneficial to the Subdivision.

Based on the foregoing, we find that the trial court's judgment concluding that Roy Longstreet intended to convey his rights as Developer to Ranch Roy–L is supported by substantial evidence. As such, the trial court did not err in entering judgment in favor of Ranch Roy–L on the issue of Ranch Roy–L's right to subdivide Out–Lot F and add property in accordance with the authority vested in it, as the Developer, in the Declaration. Point I is denied.

Respondents' assertion of their affirmative defenses is moot in light of our finding that Appellants' claims fail on the merits. However, we note that Ranch Roy–L acted as, and was treated as, Developer without protest by the Association for over thirty years and by Appellants for almost twenty years, and that Appellants and the Association readily accepted the benefits resulting from Ranch Roy–L acting as Developer during this period of time.

Accordingly, Point II is denied as moot.

### Conclusion

Because we find that the judgment of the trial court is supported by substantial evidence, it is affirmed.

MARY K. HOFF, P.J., and GEORGE W. DRAPER III, J., concur.